UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**MATTHEW LEWIS BEARDEN**,                    Case No. 6:15-cv-00475-KI

              Plaintiff,                    OPINION AND ORDER

    v.

**CAROLYN COLVIN, Acting
Commissioner of Social Security**,

              Defendant.

    Drew L. Johnson
    170 Valley River Dr.
    Eugene, OR 97401

    John E. Haapala, Jr.
    401 E. 10th Ave., Ste. 240
    Eugene, OR 97401

        Attorneys for Plaintiff

    Billy J. Williams
    United States Attorney
    District of Oregon

Janice E. Hebert
Assistant United States Attorney
1000 SW Third Ave., Ste. 600
Portland, OR 97204-2902

David J. Burdett
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Ste. 2900 M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant


KING, Judge:

      Plaintiff Matthew Bearden brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB").  I reverse the decision of the Commissioner and remand for further proceedings.

**BACKGROUND**

      Bearden filed an application for DIB and a period of disability on December 8, 2011, alleging disability as of November 15, 2008.  The application was denied initially and upon reconsideration.  After a timely request for a hearing, Bearden, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on August 27, 2013.

      On September 20, 2013, the ALJ issued a decision finding Bearden was not disabled within the meaning of the Act and therefore not entitled to benefits.  This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on January 23, 2015.


Page 2 - OPINION AND ORDER

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one

"which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Parra*, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g) and 416.920(g).

### STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less

than a preponderance.  *Id.* (internal quotation omitted).  The court must uphold the ALJ's

findings if they "are supported by inferences reasonably drawn from the record[,]" even if the

evidence is susceptible to multiple rational interpretations.  *Id.*

## THE ALJ'S DECISION

Bearden's date last insured was December 31, 2013.  According to the ALJ, Bearden's

severe impairments are:  history of hepatitis C, degenerative joint disease of the right AC joint,

history of migraine headaches, anxiety, and depression.  The ALJ found these impairments, either

singly or in combination, did not meet or medically equal the requirements of any of the

impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  As a result, the ALJ concluded

Bearden could perform light work.  He could no more than occasionally climb ladders, ropes, or

scaffolds.  He could no more than occasionally reach, push, and pull with the right upper

extremity.  Bearden would need to avoid concentrated exposure to moving machinery, heights,

and similar hazards.  He is limited to simple, repetitive, and routine tasks requiring no more than

occasional interaction with the general public.

## FACTS

Bearden, who was 48 years old at the time of the hearing, alleges disability beginning in

November 2008 as a result of undergoing hepatitis C treatment.  The treatment was successful,

but because the disease was caught late he alleges he sustained liver damage.  From Bearden's

perspective, the treatment amplified the fatigue he first began feeling from the hepatitis C.  In

addition, at the hearing, Bearden complained of headaches, foot pain from plantar fasciitis,

bursitis in his right hip, and degeneration of his spine.  He hurt "from neck to foot."  Tr. 44.

Bearden, who has a GED, was in the Navy from 1982 to 1986.  He worked in carpentry, as an electronics technician, and maintenance technician after leaving the service.  He discovered he had hepatitis C in 2004 and underwent treatment for a time, but stopped due to side effects.

As of September 2008, the Department of Veteran's Affairs ("VA") considered Bearden 20 percent disabled as a result of hepatitis C and 10 percent for superficial scars.  At that time, Gary Sacks, Ph.D., examined Bearden for depression.  Bearden complained of irritability and poor concentration.  Dr. Sacks found Bearden's cognitive functioning was grossly intact and that he had no trouble communicating.  Bearden had given up fishing because he felt too tired.  Dr. Sacks described Bearden's depression as mild and assigned a Global Assessment of Functioning ("GAF") of 65.[1]

Bearden subsequently underwent six months of anti-viral therapy treatment for hepatitis C, which concluded in February 2010.

Bearden saw Sheree Stephens, M.D., in September 2010 for a compensation and pension examination.  She noted Bearden's hepatitis C had been successfully treated, but that Bearden reported symptoms of muscle and joint pain, headaches, fatigue, malaise, depression, anxiety and decreased concentration.  She reported his symptoms included memory loss, decreased concentration, difficulty following instructions, and decreased mobility.

---

[1]The GAF is a scale from 1-100, in ten point increments, that is used by clinicians to determine the individual's overall functioning.  A GAF of 61 to 70 means "**Some mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning** (e.g., occasional truancy, or theft within the household), **but generally functioning pretty well, has some meaningful interpersonal relationships.**"  The American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000) ("DSM-IV").  The most recent edition of the DSM eliminated the GAF scale. *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2012).

At a May 2011 general medical examination for VA compensation and pension, Bearden reported he drove himself everywhere. He complained of tension type headaches, which the reviewing doctor, Yasmin Ansari, M.D., thought would have no effect on sedentary employment. Dr. Ansari noted Bearden's hepatitis C had been successfully treated, and his liver function tests were normal, but that Bearden had been complaining of body aches, fatigue, and depression. Bearden did concede the combination of fluoxetine and bupropion controlled his depression-related symptoms. Dr. Ansari opined that a sedentary occupation would be best for Bearden. She also noted that Bearden

> leads an active life volunteering for his church and helping friends etc. He is able
> to perform a fair amount of physical labor such as helping build fences etc. but
> this makes him tired and he has to rest for a prolonged period of time following
> [such] physical activity. Given this complaint of fatigue related to physical work,
> sed[e]ntary employment is best suited for this vet.

Tr. 270.

The same day, Bearden also underwent a compensation and pension examination for his depression. He reported a dysphoric[2] mood, lack of energy, insomnia, decreased concentration, and increased feelings of hopelessness, helplessness, and worthlessness. He reported panic attacks. In the past, he could work half a day for three days, and then needed to take two days off to recover. The reviewing physician, Gregg Sashkin, Ph.D., identified below-average concentration and below-average short-term memory. Bearden appeared mildly depressed. Bearden also indicated he wanted to try self-employment, suggesting he believed he could work,

---

[2]"A state of feeling unwell or unhappy[.]"  c.merriam-webster.com/medlineplus/
dysphoric (last visited Mar. 8, 2015).

so long as he could control his schedule.  Dr. Sashkin assigned a Global Assessment of

Functioning of 40.[3]

Thomas A. Thorn, M.D., examined Bearden in October 2011, who reported "body pain

everywhere, in nearly every joint, right upper abdomen, muscles, that it is there all the time,

significantly [a]ffects his ability to function and enjoy life[.]"  Tr. 357.  Bearden inquired about

Oxycodone as a pain relief option.  Upon examination, Bearden displayed grossly normal

strength and tone, but diffuse tender areas with symmetry.  Dr. Thorn agreed to start Bearden on

Oxycodone.

In November 2011, the VA increased Bearden's depression evaluation from 50 percent to

70 percent, continued his hepatitis C evaluation at 10 percent, and put his carpal tunnel syndrome

at 0 percent.  The VA denied Bearden's request for an unemployability finding.

In December 2011, one of his VA physicians disputed that Bearden's fatigue could be

related to his hepatitis C treatment, and wondered whether it could be due to sleep apnea,

depression or his medications.  Tr. 295.  Bearden also reported his chronic pain was managed.

Tr. 301; 321 ("chronic pain - meds are working").

Bearden called to say he had been told he needed to go back to work at the end of March

2012, but he was taking increased amounts of Oxycodone and clonazepam as a result.  He asked

for refills.  At an April 2012 appointment with his primary care physician, Charles Mantey, M.D.,

Bearden said he could not work because of his fatigue.  He said he needed frequent breaks and

---

[3]A GAF of 31-40 means "**Some impairment in reality testing or communication** (e.g.,
speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas,
such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man
avoids friends, neglects family, and is unable to work; child frequently beats up younger children,
is defiant at home, and is failing at school)."  DSM-IV 34.

needed to take time off to recover from the previous day.  He worked construction and needed to

work half days and "at times . . . requires recovery sometimes up to 1 day before resuming his

construction activities."  Tr. 565.  He was taking Elavil for his fibromyalgia, and Vicodin

sparingly.  Twelve of 18 pressure points were positive for fibromyalgia.

Bearden reported to Dr. Mantey in June 2012 that he had been cutting trees and was

feeling sore and tired for the next two days.  Tr. 532.  He complained of right hip pain.  An x-ray

of his right hip demonstrated no acute fractures, dislocations, bony lesions or arthritic changes.

Tr. 426.  An x-ray of his lumbar spine revealed relatively mild degenerative changes throughout

the lumbar spine.  He was diagnosed with mild lumbar spondylosis.  Tr. 427.

A July 2012 examination by a chiropractor identified Bearden's problem as back pain; he

could not determine Bearden's future prognosis.

At a follow-up appointment with Dr. Mantey in August 2012, Bearden reporting hurting

his back while loading concrete and asked about Vicodin.  His new job required driving, so he

planned to take the pain medication in the evening after work.  He reported his right hip pain was

"currently somewhat improved" although "irritated by long drives."  Tr. 519.

Dr. Mantey noted Bearden's fibromyalgia was stable but not improved at a November

2012 appointment.  The doctor reported Bearden had difficulty maintaining full employment due

to pain.

In December 2012, Bearden sought treatment for pain in the balls of both feet.  He tried a

steroid injection.  He reported the injection helped when he had a follow up appointment in

January 2013.

He was diagnosed with gout in May 2013.  In June, Dr. Mantey reviewed a depression screen and concluded Bearden had "[n]o mental health condition requiring further intervention." Tr. 467.  Dr. Mantey commented that Bearden's chronic arthralgia and fatigue is "[p]robably residual from either hep C or fibromyalgia.  Has seen rheumatology in the past and trialed on plaquenil + prednisone which he did not tolerate well."  *Id.*

Since his alleged onset date, Bearden drove a truck for a few months, but testified he was fired for damaging the equipment.  He then worked as a courier for a month before he again got into a traffic accident.  He earned around $30,000 to $40,000 most years from 1995 until 2008. When the VA asked a former employer about Bearden, they responded Bearden left their employment due to lack of work and poor attendance during the probationary period.

## DISCUSSION

Bearden challenges the following parts of the ALJ's decision:  his analysis of the medical evidence and VA finding, his treatment of Bearden's testimony, and his rejection of Bearden's wife's testimony.

I.    Medical Evidence

Bearden argues the ALJ mishandled the opinions of Dr. Mantey, Dr. Sashkin, and the report from compensation and pension examiner Dr. Stephens.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may

only reject it for clear and convincing reasons.  *Id.* (treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician).  Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066.  The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  *Widmark*, 454 F.3d at 1066 n.2.

A.    Dr. Mantey

Dr. Mantey diagnosed Bearden with fibromyalgia and commented on several occasions that Bearden needed to take breaks and take time off to recover from physical activity performed the previous day.  Bearden argues the ALJ was required to give clear and convincing reasons to reject Dr. Mantey's opinion and diagnosis of fibromyalgia.

The ALJ did not directly discuss Dr. Mantey by name, but he did reference examination findings from some of Dr. Mantey's treatment records.  The ALJ did not, however, mention the treatment notes in which Dr. Mantey diagnosed Bearden with fibromyalgia, based on 12 of 18 pressure points, and he did not mention Dr. Mantey's note in which the doctor commented that Bearden had difficulty maintaining full employment due to the pain caused by fibromyalgia.  Tr. 580, 509.  Additionally, the ALJ did not discuss Dr. Mantey's prescriptions of Oxycodone and Vicodin to medicate Bearden's chronic pain.  Unlike Dr. Sashkin, discussed below, the VA did not mention Dr. Mantey's treatment records.

The Commissioner suggests the ALJ's reference to some of Dr. Mantey's chart notes was sufficient, and argues that what Bearden labels the doctor's "opinion" was just Bearden's subjective report about the effect of his fatigue and pain on his ability to work.

To the contrary, however, at least one of Dr. Mantey's notes about the effect of Bearden's fibromyalgia on his ability to work did not appear in the subjective section of the chart notes. As a result, I find the ALJ erred in failing to discuss in full Dr. Mantey's treatment of Bearden. Further, where the ALJ did not note Dr. Mantey by name, did not discuss the diagnosis of fibromyalgia, and did not mention the doctor's belief that Bearden's fibromyalgia made it difficult for Bearden to "maintain[] full employment due to pain," I cannot "confidently conclude" that the ALJ's error was harmless. *Marsh v. Colvin* 792 F.3d 1170, 1173 (9th Cir. 2015). The Commissioner sets out many reasons on which the ALJ could rely to disregard Dr. Mantey's opinion, but, as the *Marsh* court commented, "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Id.* Accordingly, remand is appropriate to more fully address this evidence.

B.    Dr. Sashkin

As with Dr. Mantey, the ALJ did not mention Dr. Sashkin by name. In fact, the ALJ did not even obliquely reference any of the findings made by Dr. Sashkin in May 2011. Bearden points out Dr. Sashkin found he demonstrated below average short term memory and below average concentration, and assigned him a GAF of 40.

The Commissioner suggests that because the VA considered Dr. Sashkin's examination findings in its disability rating and employment determination, and because the ALJ gave

adequate consideration to *that* decision, nothing required the ALJ to discuss Dr. Sashkin's opinion.

It is true the VA extensively discussed Dr. Sashkin's findings, and increased Bearden's disability percentage for depression from 50 percent to 70 percent based on those findings. However, also relying in part on Dr. Sashkin's findings, the VA found Bearden's depression had not reached a level that would affect his ability to secure and hold a job. As a result, the VA denied Bearden's entitlement to unemployability.

The ALJ's best practice would have been to discuss Dr. Sashkin's opinion directly. Nevertheless, because the ALJ's treatment of the VA's decision was proper, at least with respect to Bearden's mental impairments as I discuss below, and because the VA itself fully discussed Dr. Sashkin's findings, in this circumstance I can confidently conclude the ALJ's error was harmless. *See Marsh*, 792 F.3d at 1173 (harmless error doctrine available when evaluating medical opinions).

    C.    Dr. Stephens

Again, the ALJ made no reference to Dr. Stephens' examination findings from the single time she saw Bearden following the conclusion of his hepatitis C treatment in September 2010. The VA determination did not address Dr. Stephens' reports of Bearden's symptoms of muscle and joint pain, as well as his headaches and decreased concentration. Since I am remanding this case for the ALJ's to further assess Dr. Mantey's opinion and diagnosis of fibromyalgia, I also direct the ALJ to consider this evidence. Although there are reasons the ALJ may reject this evidence, the ALJ should address Dr. Stephens' treatment notes in the first instance.

II.    VA Disability Rating

The VA assigned Bearden with a disability rating of 70 percent for his depression and 10 percent for his hepatitis C.  However, it concluded Bearden was not entitled to a finding of unemployability.  The ALJ gave "great weight" to the VA determination, finding it to be consistent with the medical evidence.

A VA disability rating is entitled to great evidentiary weight in a Social Security proceeding.  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).  Bearden relies on this case, in which the claimant was deemed "unable to secure and follow a substantially gainful occupation" with an 80 percent disability rating, to argue Bearden is entitled to a finding of disability.  *Id.* at 1073.  Here, however, the VA concluded Bearden *is* capable of employment despite his 80 percent disability rating.  Accordingly, the ALJ did not err in how he weighed the VA decision.

I do note, however, that the ALJ did not discuss the portion of the VA's decision relying on Dr. Ansari's opinion that Bearden could perform work in *sedentary* occupations.  Tr. 215. Since I am remanding the case for further administrative proceedings, the ALJ should address this portion of the VA's decision.

III.    Bearden's Credibility

Bearden testified he had trouble sleeping.  On a good day, he ran errands in town, maybe went grocery shopping, but then came home for a nap.  After a nap, he might load the dishwasher or wash his car, before taking another nap.  He had four or five bad days in a week and on those days he did not want to get out of bed.  He spent his days reading, playing video games and watching television.  He lied down twice a day for an hour.  He played music at church.

Page 14 - OPINION AND ORDER

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence. *Id.* "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ questioned the intensity of Bearden's symptoms given his actual functioning and treatment history. The ALJ pointed to records reflecting Bearden's ability to get along with others (since he went on a church retreat), and his fairly high level of activity, including riding an ATV, driving in Eastern Oregon, regularly attending and playing the bass at church, and engagement in physical labor such as cutting trees, loading concrete, and remodeling his house. Tr. 281, 312, 328-29, 457. The ALJ also commented on Bearden's daily activities, including running errands, doing chores, playing video games, reading, and shopping.

Page 15 - OPINION AND ORDER

The ALJ's reliance on these activities is one clear and convincing reason to question the intensity of Bearden's symptoms.  Nevertheless, because the ALJ did not fully address Dr. Mantey's diagnosis of fibromyalgia and notations of pain and fatigue, or Dr. Stephens' reports of concentration problems, the ALJ should reassess Bearden's credibility in the context of a complete assessment of Bearden's medical records to determine whether the reason is still apt.

IV.    Lay Witness Testimony

Bearden's wife testified that she sees Bearden has difficulty concentrating and his temper flares up a few times a week; she also has noticed memory loss and that he sleeps a lot.  They moved their bedroom to a lower floor so Bearden would not have to climb stairs.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).

The ALJ found Mrs. Bearden's testimony was entitled to little weight for the same reasons he gave for Bearden.  Specifically, he found Mrs. Bearden's testimony was not supported by the medical records or by Bearden's reported activities.  The extent of Bearden's reported activities is a germane reason to question Mrs. Bearden's observations.  As a result, the ALJ did not err in his treatment of Mrs. Bearden's testimony.

V.    Remedy

The court has the discretion to remand the case for additional evidence and findings or to award benefits.  *McCartey*, 298 F.3d at 1076-77.  The court has discretion to credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and

it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

The ALJ erred in failing to discuss Dr. Mantey's diagnosis and opinion, as well as Dr. Stephens' chart notes, and these errors may have affected the ALJ's assessment of Bearden's testimony. In addition, the ALJ erred in failing to fully address the VA's employability determination which relied on evidence suggesting Bearden is capable of only sedentary work. As a result, the ALJ has additional issues to resolve before a determination of disability can be made.

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above. Judgment will be entered.

IT IS SO ORDERED.

DATED this _____15th_____ day of March, 2016.


        /s/ Garr M. King_____
        Garr M. King
        United States District Judge